IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION

CLARENCE MCCORD                                                                          PLAINTIFF

V.                                                              CIVIL ACTION NO.: 3:16-CV-216-RP

COMMISSIONER OF SOCIAL SECURITY                                                          DEFENDANT

**MEMORANDUM OPINION**

Plaintiff Clarence McCord has applied for judicial review under 42 U.S.C. § 405(g) of the Commissioner of Social Security's decision denying his application for supplemental security income (SSI) under Title XVI of the Social Security Act. Docket 1. Plaintiff filed an application for benefits on January 15, 2013, alleging disability beginning on August 9, 2009. Docket 7 at 178-183.

The agency administratively denied Plaintiff's claim initially on April 23, 2013, and on reconsideration on September 3, 2013. *Id*. at 81- 91; 94-103. Plaintiff then requested an administrative hearing, which the Administrative Law Judge (ALJ) held on January 20, 2015. *Id*. at 116-17; 128-32. The ALJ issued an unfavorable decision on May 1, 2015. *Id*. at 9-23. The Appeals Council denied his request for review on July 19, 2016. *Id*. at 1-4. Plaintiff timely filed this appeal from the July 19, 2016 decision, the undersigned held a hearing on May 11, 2017, and it is now ripe for review.

Because both parties have consented to a magistrate judge conducting all the proceedings in this case as provided in 28 U.S.C. § 636(c), the undersigned has the authority to issue this opinion and the accompanying final judgment. Docket 9.

# I. FACTS

Plaintiff was born January 10, 1963, and was 52 years old at the time of the ALJ hearing. Docket 7 at 178. At the time Plaintiff's application was filed, Plaintiff was 50 years old and considered an individual closely approaching advanced age. *Id*. at 21. Plaintiff has an eighth grade education and has past relevant work in construction, which is considered semi-skilled, medium to heavy work. *Id*. at 34-35. Plaintiff testified that he last worked in 2004 or 2005 and contends he became disabled as a result of back problems, sleep apnea, breathing problems, arthritis, diabetes, and depression. *Id*. at 35; 81. Plaintiff testified that, due to his back pain, he hurts all the time and cannot stand for more than a couple of hours "on a good day." *Id*. at 38.

Regarding Plaintiff's mental health issues, he testified that he was previously treated by a therapist for his anxiety and depression and was prescribed celexa but currently just "read[s] the Bible and pray[s] to God about [his] depression." *Id*. at 48. Due to his excessive worry about his friends and family members and their wellbeing, Plaintiff stated that he "ain't been to sleep in days, and […] can't even think right." *Id*. at 49. Plaintiff testified that he is able to cook and clean for himself but described some limitations in his ability to drive a car and stated that his family and friends assist him with grocery shopping. *Id*. at 40, 42.

Plaintiff's Function Report – Adult was submitted on January 30, 2013, in which he stated that his conditions affect his ability to lift, squat, bend, stand, reach, walk, sit, kneel, talk, hear, climb stairs, see, complete tasks, concentrate, use his hands, and get along with others. *Id*. at 218. Plaintiff indicated that he uses a cane, a brace/splint, glasses, and an electric shopping cart but stated that none of these devices was prescribed by a doctor. *Id*. at 219. In the general remarks section, Plaintiff listed the following conditions from which he suffers: arthritis, sleep

apnea, nerves, anxiety, major depression, chronic pain, diabetes, mesothelioma, or some form of cancer from working with asbestos in the construction industries. *Id*. at 220

The ALJ established that Plaintiff had not engaged in substantial gainful activity since January 15, 2013, the application date. *Id*. at 14. Next, the ALJ found that Plaintiff experienced the severe impairments of arthralgias, obesity, obstructive sleep apnea, depression, and anxiety but that Plaintiff's impairments did not meet or medically equal a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 416.920(d), 416.925, and 416.926). *Id*. at 14-15.

The ALJ specifically discussed how Plaintiff's mental impairments, considered singly and in combination, do not meet or medically equal the criteria of Listing 12.04. *Id*. The ALJ determined that Plaintiff has mild restrictions in the activities of daily living, moderate difficulties in social functioning and concentration, persistence, and pace, and has not experienced any episodes of decompensation. *Id*. at 15. Furthermore, the ALJ determined that Plaintiff "is able to live alone and care for his needs […] outside of a highly supportive environment." *Id*.

Considering all of Plaintiff's severe impairments, the ALJ found that Plaintiff's demonstrated abilities were consistent with a Residual Functional Capacity (RFC) to perform light work. *Id*. at 15-21. The ALJ concluded that Plaintiff could "occasionally climb ramps and stairs, […] crouch, stoop, kneel, and crawl" but should "avoid climbing ladders, ropes, and scaffolds" and "should not work at exposed heights or around dangerous machinery." *Id*. at 15. Further, the ALJ limited Plaintiff "to jobs involving simple and routine tasks," "frequent interaction with coworkers and supervisors," and "occasional interaction with the general public." *Id*.

The record contains two medical source statements from Plaintiff's treating physician Dr. Ramon Rosencrans dated September 15, 2011 and April 28, 2014. *Id*. at 242-44; 356-58. As a result of Plaintiff's chronic low blood pressure, osteoarthritis/joint pain, and depression, Dr. Rosencrans opined that Plaintiff experienced constant (meaning 67% or more of the day) "pain or other symptoms severe enough to interfere with attention and concentration needed to perform even simple work tasks during a normal eight-hour work day." *Id*. at 242, 356. He indicated that due to Plaintiff's back pain, he could sit, stand, and walk for less than two hours during a normal workday and needed to elevate his legs with prolonged sitting. *Id*. at 243, 357. Dr. Rosencrans stated that Plaintiff required the use of a cane to assist with balance. *Id*.

In his first medical source statement, Dr. Rosencrans opined that due to his back and leg pain, Plaintiff could occasionally lift and carry 10 pounds in a normal eight-hour workday; occasionally twist, stoop, and climb stairs, and never crouch or climb ladders. *Id*. at 243. In his second statement approximately two and a half years later Dr. Rosencrans believed Plaintiff could only rarely lift and carry 10 pounds, but could rarely (as opposed to never, as he had previously opined) crouch and climb ladders or stoop, and could occasionally twist and climb stairs. *Id*. at 357. Dr. Rosencrans believed Plaintiff had significant limitations in doing repetitive reaching, handling, or fingering and would likely be absent from work as a result of his impairments or medical treatment about four days per month *Id*. at 243-44; 357-58.

Despite these severe limitations and lengthy record of treatment visits from Dr. Rosencrans, the ALJ noted the absence of "any laboratory work or other clinical work up other than simply recording [Plaintiff's] temperature and blood pressure" as well as the absence of any MRI or x-ray reports. *Id*. at 18. Since the only x-rays in the record were from 2009 and "showed very mild degenerative changes," the ALJ ordered a consultative examination to obtain new x-

rays in order to "find a reason for [Plaintiff's] back pain." *Id*. at 55. On January 30, 2015, consultative examiner Dr. Covin Jordan performed an x-ray of Plaintiff's lumbar spine with the following interpretation: "Curvature is normal. No compression injury is seen. No unusual degenerative change." *Id*. at 467.

In deciding to afford only some weight to Dr. Rosencrans's opinion, the ALJ referenced Dr. Barry Politi's Mary 27, 2013, opinion that Plaintiff demonstrated "obvious gross overreaction on some palpation and movement of the extremities." *Id*. at 315. Despite refusing to perform most major musculoskeletal movements on physical examination, when preparing to leave, Dr. Politi noted that Plaintiff "had no problems bending over, picking up his shoes, and crossing his legs to show me a scar on … his foot." *Id*. Dr. Politi further noted that Plaintiff "had no difficulty walking into the parking lot and getting into his car. He was able to turn the steering wheel quite easily and lift his hands up. He was able to bend over to pick something off of the seat and open the car door without difficulty. His gait on the way out was normal." *Id*. at 316.

Similarly, the ALJ pointed to September 2012 Baptist Memorial Hospital records that contradict Plaintiff's complaints and Dr. Rosencrans's opinions. *Id*. at 21. The "Nursing Assessment" states "no skeletal deformities noted, steady gait and balance, movement is purposeful. Moves all extremities with equal strength, no weakness noted in extremities. Extremities with functional ROM for patient. No joint swelling or tenderness noted, no complaints, no calf tenderness noted." *Id*. at 252.

Based on the ALJ's review of the medical evidence and in conjunction with Plaintiff's testimony, the ALJ concluded that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [his] symptoms are not entirely credible." *Id*. at 18. The ALJ attributed "some, but not great, credence to [Plaintiff's complaints] and the opinion of his doctor" due to

objective medical evidence pointing to "some exaggeration of the severity of [Plaintiff's] condition." *Id*. at 21.

The ALJ found that Plaintiff is unable to perform any past relevant work, and his ability to perform the full range of light work is impeded by additional limitations. *Id*. at 21. Having questioned the vocational expert (VE) regarding whether jobs existed in the national economy for an individual of the Plaintiff's age, education, work experience, and RFC, the ALJ noted the VE's testimony that given those factors, Plaintiff could perform the requirements of occupations such as router and cleaner-housekeeper. *Id*. at 22. The ALJ ultimately ruled that Plaintiff had not been under a disability, as defined in the Social Security Act, since January 15, 2013, the date his application was filed. *Id*.

Plaintiff claims the ALJ failed to properly consider Plaintiff's mental health impairments and did not properly assess the opinion of Plaintiff's treating physician. Docket 12.

## II. EVALUATION PROCESS

In determining disability, the Commissioner, through the ALJ, works through a five-step sequential evaluation process.[1] The burden rests upon the plaintiff throughout the first four steps of this five-step process to prove disability, and if the plaintiff is successful in sustaining her burden at each of the first four levels, then the burden shifts to the Commissioner at step five.[2] First, the plaintiff must prove she is not currently engaged in substantial gainful activity.[3] Second, the plaintiff must prove her impairment is "severe" in that it "significantly limits [her] physical or mental ability to do basic work activities . . . ."[4] At step three the ALJ must conclude that plaintiff is disabled if she proves that her impairments meet or are medically equivalent to

---

[1] *See* 20 C.F.R. §§ 404.1520 (2012).
[2] *Crowley v. Apfel,* 197 F.3d 194, 198 (5th Cir. 1999).
[3] 20 C.F.R. §§ 404.1520(b) (2012).
[4] 20 C.F.R. §§ 404.1520(c) (2012).

one of the impairments listed at 20 C.F.R. Part 404, Subpart P, App. 1, §§ 1.00-114.09 (2010).[5] If the plaintiff does not meet this burden, at step four she must prove that she is incapable of meeting the physical and mental demands of her past relevant work.[6] At step five, the burden shifts to the Commissioner to prove, considering the plaintiff's residual functional capacity, age, education and past work experience, that she is capable of performing other work.[7] If the Commissioner proves other work exists which the plaintiff can perform, plaintiff is given the chance to prove that she cannot, in fact, perform that work.[8]

### III. STANDARD OF REVIEW

Judicial review of the Commissioner's final decision to deny benefits is limited to determining whether the decision is supported by substantial evidence and whether the Commissioner applied the correct legal standard. *Crowley v. Apfel,* 197 F.3d 194, 196 (5th Cir. 1999), citing *Austin v. Shalala*, 994 F.2d 1170 (5th Cir. 1993); *Villa v. Sullivan,* 895 F.2d 1019, 1021 (5th Cir. 1990). The court has the responsibility to scrutinize the entire record to determine whether the ALJ's decision was supported by substantial evidence and whether the proper legal standards were applied in reviewing the claim. *Ransom v. Heckler*, 715 F.2d 989, 992 (5th Cir. 1983). A court has limited power of review and may not reweigh the evidence or substitute its judgment for that of the Commissioner,[9] even if it finds that the evidence leans against the Commissioner's decision.[10]

---

[5] 20 C.F.R. §§ 404.1520(d) (2012). If a claimant's impairment meets certain criteria, that claimant's impairments are "severe enough to prevent a person from doing any gainful activity." 20 C.F.R. § 416.925 (2011).
[6] 20 C.F.R. §§ 404.1520(e) (2012).
[7] 20 C.F.R §§ 404.1520(g)(2010).
[8] *Muse*, 925 F.2d at 789.
[9] *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988).
[10] *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994); *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988).

The Fifth Circuit has held that substantial evidence is "more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Crowley v. Apfel*, 197 F.3d 194, 197 (5th Cir. 1999) (citation omitted). Conflicts in the evidence are for the Commissioner to decide, and if there is substantial evidence to support the decision, it must be affirmed even if there is evidence on the other side. *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990). The court's inquiry is whether the record, as a whole, provides sufficient evidence that would allow a reasonable mind to accept the conclusions of the ALJ. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). "If supported by substantial evidence, the decision of the [Commissioner] is conclusive and must be affirmed." *Paul v. Shalala,* 29 F.3d 208, 210 (5th Cir. 1994), citing *Richardson,* 402 U.S. at 390.

## IV. DISCUSSION

Plaintiff argues that the Commissioner's decision should be reversed on two separate grounds. Docket 12 at 3. First, Plaintiff claims that the ALJ failed to properly consider his mental health impairments of anxiety and depression. *Id*. at 4-6. Specifically, Plaintiff argues that the ALJ erred in finding that he only experiences moderate difficulties with regard to concentration, persistence, or pace in light of Dr. Pamela Buck's finding that Plaintiff's "difficulty with staying on topic and giving a chronological account of events may interfere with work instructions and performance." *Id*. at 5; *see also* Docket 7 at 321. Plaintiff contends that this finding "would likely have such an impact on the Plaintiff's RFC that he would not be able to perform any work in the national economy." Docket 12 at 6. Additionally, Plaintiff contends that the ALJ erred by not assigning weight to Dr. Buck's findings. *Id*.

The Commissioner counters, and the Court agrees, that the ALJ gave appropriate deference to Dr. Buck's opinion, despite not specifying how much weight he afforded the

opinion. Docket 13 at 6. The Court finds that any error from failing to assign weight to Dr. Buck's opinion is harmless because the ALJ specifically accounted for Plaintiff's mental limitations in formulating the RFC. *See Lindsey v. Colvin*, 2016 WL 3566858, at *3 (N.D. Miss. June 27, 2016) (plaintiff failed to demonstrate any harm suffered as a result of ALJ's failure to assign a specific stated weight to third-party statement). The ALJ's decision states, "due to [Plaintiff's] depression and anxiety, the [ALJ] finds [Plaintiff] would be limited to jobs involving simple and routine tasks consistent with unskilled work and could have frequent interaction with supervisors and coworkers and occasional interaction with the general public." Docket 7 at 21.

Dr. Buck's opinion that Plaintiff's difficulty staying on topic *may* interfere with his work performance is insufficient to deem the ALJ's RFC unsupported by substantial evidence. Moreover, Dr. Buck concluded that despite Plaintiff's difficulties staying on topic, he is "generally able to maintain attention and concentration," which is accounted for in the RFC finding. Docket 7 at 321. Finding that there is "no realistic possibility that, absent the error," the ALJ would have reached a different conclusion, the Court holds that the ALJ properly considered Plaintiff's mental health impairments when formulating his RFC. *January. v. Astrue*, 400 F. App'x 929, 933 (5th Cir. 2010).

Second, Plaintiff claims that the ALJ failed to properly assess the opinion of his treating physician, Dr. Rosencrans. Docket 12 at 6-7. Plaintiff argues that the ALJ failed to consider all of the *Newton* factors in deciding to afford only some weight to Dr. Rosencrans's opinion. *Id*. at 7. The Commissioner counters that the ALJ recognized that Dr. Rosencrans's own treatment records do not support his RFC opinion and, thus, had good cause for affording it lesser weight. Docket 13 at 11. Additionally, the Commissioner argues that the *Newton* analysis is only required where an ALJ declines to give any weight to the treating physician's opinion. *Id*. at 12.

Here, the Commissioner points out that ALJ did not entirely reject Dr. Rosencrans's opinion and argues that the *Newton* analysis was not required. *Id*. at 12-13.

The law regarding treatment of an opinion from a treating source or treating physician is clear. Absent reliable medical evidence from a *treating or examining* specialist, an ALJ may reject the opinion of a treating physician only if the ALJ performs a detailed analysis of the treating physician's views under the criteria set forth in 20 C.F.R. § 404.1527(c)(2) (emphasis added); *see also*, *Newton v. Apfel*, 209 F.3d 448, 453 (5th Cir. 2000). The ALJ is required to perform a detailed analysis of the treating physician's opinion using these "*Newton* factors" only if there is no reliable medical evidence from another *treating or examining* physician that controverts the treating physician's opinion. *See Newton*, 209 F.3d at 445-47 (emphasis added); *Rollins v. Astrue*, 464 F. App'x 353, 358 (5th Cir. 2012). Additionally, good cause may exist to allow an ALJ to give lesser weight to evidence from a treating physician relative to other experts where the treating physician's evidence is conclusory, is unsupported by medically acceptable clinical, laboratory, or diagnostic techniques, or is otherwise unsupported by the evidence. *Newton*, 209 F.3d at 456.

While it is true that a treating physician's opinion should be afforded considerable weight, "the ALJ has sole responsibility for determining a claimant's disability status […and] is free to reject the opinion of any physician when the evidence supports a contrary conclusion." *Newton*, 209 F.3d at 455. The Court agrees with the Commissioner that substantial evidence supports the ALJ's decision to afford Dr. Rosencrans's opinion only some weight due to the lack of medical evidence demonstrating Plaintiff's alleged limitations and the presence of reliable, firsthand medical evidence contradicting Dr. Rosencrans's opinion.

The lengthy record of treatment visits with Dr. Rosencrans does not support the limitations identified in his 2011 and 2014 medical source statements. For example, between January 2013 and December 2014, on more than ten separate occasions, Plaintiff's musculoskeletal physical examination states: "Extremities: no cyanosis, edema, variscosities, or palpable cord. Motor Strength and Tone: normal tone and motor strength. Joints, Bones, and Muscles: no contractures, malalignment, or bony abnormalities." *Id*. at 333, 336, 361, 365, 368, 371, 374, 388, 393, 397, 401, 405. The only musculoskeletal limitation Dr. Rosencrans notes in these same records is "tenderness and limited range of motion." *Id*.

Additionally, the ALJ decision notes the absence of any laboratory or clinical work or radiological studies substantiating Plaintiff's subjective pain complaints. *Id*. at 17-20. The consultative x-ray report, Dr. Politi's findings, and the Baptist Memorial Hospital records, as discussed in Section I., do not support the physical limitations identified by Dr. Rosencrans. The ALJ did not reject Dr. Rosencrans's opinion, but instead found "good cause" for affording it only some weight due to "the absence of any abnormality by x-ray and the observations of Dr. Politi" and the September 2012 records from Baptist Memorial Hospital pointing to "some exaggeration of the severity of [Plaintiff's] condition." Docket 7 at 21. The Court finds that the ALJ's determination that Dr. Rosencrans's opinion should not be given controlling weight is supported by substantial evidence.

## V. CONCLUSION

After diligent review, the Court concludes that the ALJ properly considered Plaintiff's mental health impairments in formulating his RFC and properly discounted Dr. Rosencrans's opinion as it was not supported by substantial evidence. The Court finds that the ALJ properly considered all of the record evidence in determining Plaintiff's impairments and making an

ultimate disability finding. Because the ALJ's decision was supported by substantial evidence, the Court affirms the decision of the Commissioner.

A final judgment in accordance with this memorandum opinion will issue this day.

**SO ORDERED,** this the 8th day of June, 2017.

/s/ Roy Percy
UNITED STATES MAGISTRATE JUDGE